# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

|  |  |
|---|---|
| MKHITAR MNATSAKANYAN,<br><br>Petitioner,<br><br>v.<br><br>FERETI SEMAIA, et al.,<br><br>Respondents. | Case No. 5:26-cv-02417-ACCV<br><br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |

## I.    RULING

On May 6, 2026, Petitioner Mkhitar Mnatsakanyan ("Petitioner") filed a Petition for Writ of Habeas Corpus ("Petition"), pursuant to 28 U.S.C. § 2241 ("§ 2241"), challenging his detention as a violation of the Due Process Clause of the Fifth Amendment.  (Dkt. No. 1.)  Consistent with recent decisions by this District and others, the Court finds that Petitioner's re-detention, without pre- or post-deprivation process, violates due process.  For the reasons stated herein, the Court GRANTS the Petition and ORDERS Respondents to release Petitioner Mkhitar Mnatsakanyan (A# 249118595) from custody immediately.

## II.    FACTS AND PROCEDURAL HISTORY

Petitioner is a native dond citizen of Armenia.  (Dkt. No. 1 at 3.)  On or about December 5, 2024, Petitioner entered the United States after applying for admission at

the San Ysidro border.  (*Id.* at 3-4.)  Petitioner was paroled into the United States.  (*Id.* at 4.)  Petitioner was also placed into removal proceedings, which he alleges remain ongoing and asserts that he has no final order of removal.  (*Id.*)  According to Petitioner, he complied with Immigration and Customs Enforcement ("ICE") requirements and has no criminal history.  (*Id.*)  Petitioner alleges that he originally missed check-ins due to confusion regarding the process, but subsequently "demonstrated full compliance."  (*Id.*)  Initially, Petitioner was placed on an ankle monitor, but the ankle monitor was removed after ICE determined he was compliant and posed no risk.  (*Id.*)  Petitioner attended all of his following ICE appointments.  (*Id.*)

According to Petitioner, he suffers from serious medical conditions which include kidney removal, history of gallbladder disease requiring surgical intervention, gastrointestinal complications, obesity, and sleep-related breathing issues.  (*Id.* at 4-5.)  Petitioner alleges his ongoing medical conditions require monitoring, dietary regulation, and consistent medical care, and his detention interferes with providing for these needs.  (*Id.* at 5.)

Prior to detention, Petitioner resided with his father, who provided him with housing and support.  (*Id.*)  Petitioner's father submitted a declaration asserting that Petitioner will reside with him after release and that he will help ensure Petitioner's compliance with immigration obligations.  (*Id.* at 23 of 44.)  Petitioner alleges he has strong community ties, a stable residence, and that he is not a danger to the community nor a flight risk.  (*Id.* at 5.)

After living in the community for more than a year, Petitioner was rearrested and re-detained while appearing at a scheduled ICE check-in on April 18, 2026.  (*Id.* at 4.)  Petitioner did not receive any "warning" or a hearing prior to being taken into custody.  (*Id.*)

Petitioner is currently in ICE custody at the Adelanto ICE Processing Center in Adelanto, California.  (*Id.* at 3.)

In his May 6, 2026 Petition, Petitioner argues his due process rights were violated when he was re-detained without warning and without a pre-deprivation hearing.  (*Id.* at 7.)  Petitioner requests that the Court grant the Petition, issue an order requiring his immediate release, and prohibit his transfer.  (*Id.* at 8.)

On May 11, 2026, Petitioner and Respondents voluntarily consented to the assigned magistrate judge's jurisdiction under 28 U.S.C. § 636(c).  (Dkt. No. 6.)

Respondents filed their Answer to the Petition on May 13, 2026.[1]  (Dkt. No. 8.)  They assert that "Petitioner's detention is plainly authorized by Section 1226(a)" due to "changed circumstances[.]"  (*Id.* at 1.)  Specifically, Respondents allege that Petitioner "accrued a litany of violations of his [Alternatives to Detention ("ATD") program] conditions."  (*Id.* at 1.)  Respondents also argue that if the Court orders a bond hearing pursuant to § 1226, that such order should be consistent with other orders in this District requiring a "§ 1226(a) hearing be provided in seven days so that the Immigration Court could evaluate, at a minimum, Petitioner's danger to the community or if he poses a flight risk."  (*Id.* at 2.)

Petitioner filed his reply on May 18, 2026, arguing that Respondents fail to establish changed circumstances that justify Petitioner's re-detention, that Respondents' characterization of Petitioner's supervision violations is inaccurate, that Petitioner suffers from depression which affects his ability to manage communications and appointments, that Respondents' records contain inconsistencies, and that Petitioner's due process rights were violated.  (Dkt. No. 9 at 3-11.)  In the Reply, Petitioner restates his request that this Court grant his Petition, order his immediate release, and prohibit his transfer during the pendency of the case.  (*Id.* at 11.)  Petitioner adds the additional request that this Court prohibit his detention absent constitutionally adequate pre-deprivation notice and hearing.  (*Id.*)

---

[1] Respondents claim that Petitioner filed an "*ex parte* application for temporary restraining order[.]"  (Dkt. No. 8 at 1.)  It is unclear to the Court where or when Petitioner filed an *ex parte* application for temporary restraining order.

### III.    LEGAL STANDARD

Federal district courts possess the authority to grant petitions for writ of habeas corpus by a person who claims to be held "in custody in violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(a), (c)(3).  "The petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief."  *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); *see also Sepulveda Ayala v. Bondi*, 794 F. Supp. 3d 901, 911 (W.D. Wash. 2025) (noting that immigration detainee bears burden of proving by a preponderance of the evidence that he is entitled to habeas relief).

### IV.    DISCUSSION

Petitioner makes procedural and substantive due process claims against Respondents.  (Dkt. No. 1 at 7.)  The Court begins with Petitioner's procedural due process claim, as success on that claim would offer him the most significant relief, which is an order for release from custody.  For the below reasons, the Court concludes that Petitioner's detention violates due process.

**A.    The Court Has Jurisdiction.**

As an initial matter, this Court has habeas jurisdiction over this case.

8 U.S.C. § 1226(e) provides: "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."  "That provision does not, however, preclude habeas jurisdiction over constitutional claims or questions of law."  *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017) (quotation marks and citations omitted).

Petitioner challenges the constitutionality and sufficiency of the process by which he was arrested, had his release revoked, and was re-detained.  (Dkt. No. 1 at 3-7.)  As such, this Court has habeas jurisdiction under 28 U.S.C. § 2241 to consider these claims.  *See Hernandez*, 872 F.3d at 987.

/ / /

/ / /

4

**B.      Petitioner's Detention Violates Due Process.**

A writ of habeas corpus may be granted to any petitioner who demonstrates "[h]e is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(a), (c)(3).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S. Ct. 1827, 1833, 36 L. Ed. 2d 439 (1973).  "[A]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *Rasul v. Bush*, 542 U.S. 466, 474, 124 S. Ct. 2686, 2692, 159 L. Ed. 2d 548 (2004).  A petitioner bears the burden of proving by the preponderance of the evidence that he is entitled to habeas relief.  *Davis*, 384 F.3d at 638.

Petitioner argues the revocation of his release and his re-detention violate his procedural due process rights under the Fifth Amendment.  (Dkt. No. 1 at 3-7.) Respondents assert that Petitioner's detention is authorized due to changed circumstances resulting from Petitioner's violations of his ATD program conditions. (Dkt. No. 8 at 1.)  Notably, Respondents provide no response to Petitioner's due process claim in their Answer.  (*See generally* Dkt. No. 8.)  Accordingly, the Court construes Respondents' failure to address Petitioner's due process claim as a concession.  *See e.g.*, *Soleimani v. Larose*, No. 25-CV-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting habeas petition where government's response to the petition failed to respond to numerous claims raised in the petition, including a Fifth Amendment due process claim); *Singh v. Chiang*, No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15, 2025) (construing government's failure to oppose argument raised by habeas petitioner as a concession); *MILENA APERYAN, Petitioner, v. FERETI SEMAIA, et al., Respondents.*, No. 5:26-CV-00699, 2026 WL 874734, at *4 (C.D. Cal. Mar. 27, 2026) (same).  Nonetheless, the Court analyzes Petitioner's due process claim below for the sake of thoroughness.

5

The Fifth Amendment guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law[.]"  U.S. CONST. amend. V.  Although "[the] Fifth Amendment's protections do not extend to aliens outside the territorial boundaries [of the United States,] . . . once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."  *Zadvydas v. Davis*, 533 U.S. 678, 693, 121 S. Ct. 2491, 2500, 150 L. Ed. 2d 653 (2001).  "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."  *Reno v. Flores*, 507 U.S. 292, 306, 113 S. Ct. 1439, 1449, 123 L. Ed. 2d 1 (1993).

"Due process is flexible and calls for such procedural protections as the particular situation demands."  *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976) (cleaned up).  The *Mathews* test balances three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  424 U.S. at 335; *see also Zinermon v. Burch*, 494 U.S. 113, 127, 110 S. Ct. 975, 984, 108 L. Ed. 2d 100 (1990).  "Applying this test, the [Supreme Court] usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property."  *Zinermon*, 494 U.S. at 127 (emphasis in original) (collecting cases).

The first *Mathews* factor is Petitioner's private interest.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."  *Zadvydas*, 533 U.S. at 690.  "The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is

conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (citing *e.g.*, *Morrissey v. Brewer*, 408 U.S. 471, 482, 92 S. Ct. 2593, 2601, 33 L. Ed. 2d 484 (1972) (finding prison parolees have a due process liberty interest)).

Because Petitioner was initially released into this country under the ATD program (Dkt. No. 8 at 1), has lived in this country for over a year with his family, and has built community ties, he has a significant liberty interest in remaining free from detention that must be protected by adequate procedural safeguards. *See Morrissey*, 408 U.S. at 481-82 ("The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions . . . . [T]he liberty [of a parolee] is valuable and must be seen as within the protection of the Fourteenth Amendment."); *Doe*, 787 F. Supp. 3d at 1093. Though Respondents argue that they have authorization to detain Petitioner under § 1226(a), "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez*, 872 F.3d at 981. Here, as noted, Petitioner was released from ICE custody by Respondents after his initial apprehension and has been free for more than one year, living in the community with his family. His release constituted an "implied promise" that his liberty would not be revoked unless he failed to live up to the conditions of his release. *See Morrissey*, 408 U.S. at 482.

Accordingly, Petitioner's private interest in retaining his liberty is significant.

The second Mathews factor is the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards. While "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings," the Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523, 123 S. Ct. 1708, 1717, 155 L. Ed. 2d 724 (2003). The "primary" purpose of immigration detention is to

ensure a noncitizen's presence at removal proceedings or for removal, with a "secondary" purpose of preventing danger to the community. *Zadvydas*, 533 U.S. at 699. But Petitioner has not been afforded any process to determine whether his detention in fact advances either purpose.

Of note, Petitioner was initially release from custody under the ATD program after arriving in the United States. This release "at least implicitly," "reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Sun v. Santacruz*, No. 25-CV-02198-JLS-JC, 2025 WL 2730235, at *6 (C.D. Cal. Aug. 26, 2025) (citation omitted). "Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk. Once a noncitizen has been released, the law prohibits federal agents from rearresting him merely because he is subject to removal proceedings. Rather, the federal agents must be able to present evidence of materially changed circumstances—namely, evidence that the noncitizen is in fact dangerous or has become a flight risk, or is now subject to a final order of removal." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Here, Respondents do not dispute that Petitioner has no criminal record. Instead, Respondents' Answer focuses on changed circumstances arguing that "Petitioner has accrued a litany of violations of his ATD conditions." (*See* Dkt. No. 8 at 1.) Reviewing the facts in the record, the Court does not agree with this depiction of Petitioner's compliance. Inconsistencies in Respondents' records regarding Petitioner's alleged supervision violations, the expansive meaning of "violations" to include missing an app prompt, as well as record evidence that some of the alleged violations appear to be based on miscommunication, lead the Court to conclude that the record is insufficient to show that Petitioner was not compliant with his ATD program release conditions. Accordingly, based on the facts in the record, the Court finds the risk of erroneous deprivation is considerable here.

The final *Mathews* factor is the government's interest. Respondents fail to

establish that the government has any interest in allowing Respondents to re-detain Petitioner without process. "[A]s many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention hearing." *Cruz v. Lyons*, 25-cv-02879-MCS-MBK, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025) (collecting cases). "[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez*, 872 F.3d at 994. Additionally, "any fiscal or administrative burden the additional procedural safeguard of a hearing before a neutral adjudicator imposes on the government is at most "minimal[.]" *Sun*, 2025 WL 2730235, at *6 (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). "In immigration court, custody hearings are routine . . . ." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025).

After considering all three *Mathews* factors, the Court concludes that Petitioner is entitled to release on procedural due process grounds. Having found Respondents violated Petitioner's procedural due process rights, the Court need not address Petitioner's remaining claims.

## V.   CONCLUSION

For the reasons stated, the Court GRANTS the Petition and ORDERS Respondents:

(1)   to release Petitioner Mkhitar Mnatsakanyan (A# 249118595) immediately under the same conditions as he was released prior to his re-detention;

(2)   to return all property to Petitioner that was confiscated from him when he was arrested and processed into detention;

(3)   to file a statement with the Court within three days of Petitioner's release, attesting to Respondents' compliance with this Order; and

///

(4)     are prohibited from re-detaining Petitioner pursuant to 8 U.S.C. § 1226(a) absent pre-deprivation notice and a hearing at which the Government must justify the need to confine him.

DATED: June 9, 2026

_____
HON. ANGELA C. C. VIRAMONTES
United States Magistrate Judge